DECISION
Before the Court are various motions in the receivership of PSW, Inc. (PSW) related to the fee applications of special counsels Richard A. Sinapi (Sinapi) and David Steiner (Steiner). The Receiver, Allan Shine, (Receiver) had retained special counsel, on behalf of the unsecured creditors, to continue the prosecution of a contingent fee lawsuit that had been initiated by PSW prior to the receivership. Both counsels have brought motions in limine to exclude evidence from the hearing on their entitlement to costs and attorney fees, and in addition have moved for payment of costs and attorney's fees. A group of creditors of PSW (Creditors) object to the payment of the fees, and argue that neither Sinapi nor Steiner are entitled to any payment from the receivership under the two retainer agreements at issue in this case. The Creditors have also brought a motion to compel complete responses to their document production requests.
 Facts/Travel
This case is the receivership of PSW, Inc, a company that provided credit card processing services to small businesses. PSW's President and lone shareholder, John Lombardi (Lombardi), petitioned the Court for the appointment of a receiver in March, 2006. The major asset of PSW was a lawsuit against Visa, Mastercard, and various intermediaries in the credit card processing industry (the First Data litigation). In August, 2003, well before the instant receivership, PSW had engaged Sinapi, a Rhode Island attorney, and Steiner, a California attorney, to prosecute this lawsuit on a contingent fee basis. Steiner was to receive 10% of any recovery, and Sinapi was to receive 40% of any recovery.
Sinapi has produced a detailed, four-page retainer agreement which outlines his arrangement with PSW. (Modified Contingent Fee Agreement, Aug. 18, 2003, Ex. 2 to Opp. of Creditors to Motions in Limine, Oct. 27, 2006.) (Sinapi Agreement.) That agreement provides that Sinapi's firm will prosecute the First Data litigation for a fee "contingent upon the Firm obtaining, a money recovery for Client's damages." Id. ¶ 1. If successful, the firm "shall receive as an additional fee Forty Percent (40.0%) of the gross amount recovered, exclusive of costs."Id. (emphasis omitted). The firm also received a $50,000 retainer fee which would count as an advance on the 40% contingent fee. Id. Sinapi has also produced affidavits from himself, other attorneys in his firm, and from Lombardi as the President of PSW, which corroborate Sinapi's interpretation of the fee agreement, which is discussed below.
Steiner has not produced such an agreement; instead, he has submitted a letter from him to Lombardi, which states that "[p]ursuant to our recent conversations, this confirms [Lombardi's] desire to have [Steiner's firm] involved in the litigation against First Data Corporation that is being integrated into the MasterCard Visa litigation handled by [PSW's] Rhode Island lawyers." (Letter of Steiner to Lombardi, June 29, 2004.) (Steiner Retainer Letter.) "You have suggested that we receive ten percent (10%) of the recovery from First Data for our services, and that proposal is more than acceptable." Id. Steiner has also produced an affidavit from John Lombardi which corroborates Steiner's interpretation of the fee agreement, discussed below. (Lombardi Aff. (Steiner), Nov. 8, 2006.)[1] Notably, the affidavit mistakenly references the date of Steiner's agreement as August 18, 2003, which is the date that the Sinapi Agreement was executed. The affidavit appears to be either a prior or subsequent version of the similar Lombardi affidavit proffered by Sinapi. Cf. Lombardi Aff. (Sinapi), Nov. 9, 2006.
Following his appointment, the Receiver petitioned this Court for permission to hire Sinapi and Steiner as special counsel to continue prosecuting the lawsuit on behalf of the creditors of the receivership. Several creditors of PSW filed responses to the petition. Those Creditors sought to ensure that the Receiver would hire Sinapi and Steiner on the same basis that PSW had hired the two attorneys. The Receiver appeared to concur with that requirement. However, as will be described below in more detail, PSW and the Creditors have contrasting interpretations of the meaning of the underlying contingent fee agreements, the resolution of which are the ultimate issues before this Court.
On May 10, 2006, this Court approved the Receiver's request to hire Sinapi and Steiner, and authorized hiring the two attorneys "upon the same contingent fee basis upon which they were hired by [PSW] prior to initiation" of the receivership. (Ord. of May 10, 2006.) Sinapi and Steiner eventually obtained a settlement of the First Data litigation through mediation and obtained a recovery of $1,060,000. No objections to the settlement were filed, and the Court approved it on August 10, 2006.
Apparently anticipating the present dispute, Sinapi and Steiner each filed motions in limine "to exclude any evidence at any hearing on determination of counsel fee. . . relating to the intent or meaning of the [contingent fee agreement], as that agreement is an integrated contract which is unambiguous in its application" in the context of the settlement agreement obtained. (Sinapi Mot. in Limine to Exclude, Sep. 18, 2006; Steiner Joinder to Sinapi Mot., Sep. 19, 2006.) Shortly thereafter, on September 25, 2006, Steiner and Sinapi applied to this Court for the payment of counsel fees for their respective work in obtaining the $1,060,000 settlement. The Creditors have objected to the motions to exclude, and while they have not specifically filed objections to the motions for payment, their objection to the motions in limine indicates clear opposition to payment of counsel fees. Obviously, denying Sinapi's and Steiner's fee request will significantly enhance the receivership estate.
The Creditors' objection to Sinapi's fee is based on an argument that not all of the $1,060,000 recovery constituted "damages" within the meaning of the contingent fee agreement. The objection to Steiner's fee is based upon the argument that Steiner was only entitled to 10% of any recovery from "First Data," and since none of the settlement funds were contributed by "First Data," Steiner is not entitled to a contingent fee.
The Court held a telephonic conference on September 28, 2006. The Court authorized limited discovery between the parties during that conference. On November 9, 2006, the Creditors filed a motion to compel the production of documents (discovery motion) from Sinapi and Steiner. Sinapi has filed an objection to the discovery motion. The motion meticulously documents a variety of colorful emails and letters between Creditors' counsel, Sinapi, and Steiner. The discovery request appears to be aimed at procuring draft retainer agreements, draft settlement agreements, correspondence with the defendants in the First Data litigation, and anything else that could support their two arguments regarding the respective contingent fee agreements. (Request for Production of Aug. 29, 2006.)
Sinapi's objection to the request and motion is related to his earlier motion in limine: that because the contingent fee agreement is an integrated agreement whose application to the First Data settlement is unambiguous, none of what the creditors seek is relevant or discoverable. The Creditors have also tried to obtain that information from the Receiver. The Receiver contends that he has no obligation to search for the relevant documents, and has expressed an unwillingness to run up the costs of the receivership on a dispute which he believes is frivolous. On the day after Creditors filed their motion to compel production, Sinapi filed a reply brief which contained documents and affidavits that appear to satisfy some, if not all, of the Creditors' discovery requests.
In addition to a favorable ruling on the discovery motion, the objecting creditors request a hearing on the motions in limine of Sinapi and Steiner. They then request an evidentiary hearing on all matters related to the fee agreements. Sinapi and Steiner have asked that the Court deny the discovery motion, grant the motion to exclude evidence, and grant their fee requests. The Receiver has suggested that the Court would be justified in granting the fee requests now, without a hearing, in order to save the receivership estate from the expense of further hearings.
 Analysis
This Court will treat Sinapi's motion to exclude evidence together with his motion for fees, and will then address Steiner's motion to exclude and his motion for fees. The discovery motion will also be addressed where appropriate.
Ambiguity in Contracts and the Parol Evidence Rule
The interpretation of the agreements in this case requires application of the parol evidence rule. Where there exists an integrated, written agreement, parol evidence is not available to vary, alter, or contradict that written agreement. Supreme Woodworking Co. v. Zuckerberg,107 A.2d 287, 290, 82 R.I. 247, 252 (1954). "Under such rule a complete written agreement merges and integrates all the pertinent oral negotiations made at the time or prior thereto and ordinarily may not be varied or contradicted by parol evidence." Id. 107 A.2d at 287, 82 R.I. at 252. However, the Court may "consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to assist in determining its meaning." Paolella v. Radiologic Leasing Assocs., 769 A.2d 596, 599
(R.I. 2001) (internal quotations omitted).
Where a written instrument is ambiguous, as will often be the case when the writing is not an integrated agreement, the court may consider evidence which completes or clarifies a written instrument.See Supreme Woodworking Co., 107 A.2d at 290, 82 R.I. at 252. "[A]n agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier,Inc., 637 A.2d 353, 356 (R.I. 1994). Whether or not a contract is ambiguous is a question of law, and "a court may consider all evidence that is properly before it in reaching its conclusion."Westinghouse Broadcasting Co. v. Dial Media, 122 R.I. 571, 579,410 A.2d 986, 991 (1980).
Therefore, for both the Sinapi and Steiner motions to exclude evidence, the Court must first determine whether or not the writing is an integrated agreement. If so, extrinsic evidence could not be used to "vary, alter, or contradict" its terms. See Supreme WoodworkingCo., 107 A.2d at 290, 82 R.I. at 252. Then the Court must examine whether the written instrument is ambiguous, so that extrinsic evidence would be necessary to interpret the meaning of its terms.
Sinapi's Fee Agreement
The dispute over interpretation of the Sinapi's Agreement — whether the entire amount of the First Data settlement constitutes "damages" — first requires a discussion of the credit card processing industry and the First Data litigation. After credit card transactions are processed, First Data Merchant Services (FDMS) and/or First Financial Bank (FFB) (collectively First Data) pays money to its merchants based upon the quantity of goods and services that customers purchased from the merchants using a credit card. However, First Data does not immediately pay out the entire amount of money owed to its merchants. Instead, it holds an amount of money for a period of time — for example, 10% of the transaction amount — in "reserve accounts" for its merchants. That money serves as security for First Data to cover "charge-backs," which are returned consumer transactions, or fines that might be assessed against the merchants under agreements with First Data, Visa, and MasterCard, and other related entities.
PSW ran its business as a financial intermediary similar to First Data, aggregating the credit card transactions of smaller businesses which, for various reasons, could not do business directly with First Data. The Creditors in this case are four of these small businesses. Like First Data, PSW would hold "reserve accounts" for those businesses, and pay those clients based on the amount of goods and services charged by customers on their credit cards. The creditors' claims against the receivership estate are based on claims to their respective PSW's reserve accounts.
The ultimate question here is how PSW's reserve account with First Data relates to the First Data settlement agreement and the contingency fee arrangement. The Sinapi Agreement states that Sinapi's firm was retained "to provide legal representation regarding anti-trust and common law claims against" the various credit card defendants. (Sinapi Agreement 1.) It provided for a 40% contingent fee "contingent upon the Firm obtaining a money recovery for [PSW's] damages." Id. ¶ 1.
The creditors argue that of the $1,060,000 recovered in settlement, a great portion of that recovery was reserve account money that the First Data defendants would have repaid to PSW after a short period of time regardless of the litigation. Therefore, they argue that most or all of the settlement did not constitute "damages" which should be used in the calculation of the respective contingency fees. Sinapi argues in response, however, that First Data would never willingly have paid PSW anything, so the entire recovery should constitute damages for purposes of calculating the contingency fee.
The Sinapi Agreement clearly was intended to be a complete, integrated, written agreement. (Sinapi Agreement ¶ 15.) Therefore, extrinsic evidence is not available to vary or contradict its terms. However, the Creditors are not seeking to use extrinsic evidence to vary, alter, or contradict the writing. Rather, they simply argue that the writing has a different meaning than the one set forth by Sinapi. Therefore, the Court must determine whether the word "damages" in the Sinapi Agreement is ambiguous — whether it is reasonably susceptible to more than one interpretation — and extrinsic evidence is available to make that determination.
If, as Creditors contend, the reserve account contained a $1,500,000 balance that would have been returned in due course to PSW, then "damages" may have more than one possible meaning. The word "damages" could mean recoveries only for certain claims, like the anti-trust claims in the First Data litigation, exclusive of any claim to reserve account funds. "Damages" could also mean all recoveries from the First Data litigation including recoveries of reserve account funds.
Sinapi was retained in August 2003. First Data stopped processing PSW transactions in September 16, 2003. (Letter of Herbert to Lombardi, Sep. 16, 2003, Ex. 11 to Opp. of Creditors' to Motions in Limine.) It appears from the evidence in the record that, in October 2003, First Data claimed that the amount of liability for chargebacks and fines was $2,584,000 and exceeded PSW's reserve account by approximately $1,000,000. (Letter of Shalom to Steiner, Oct. 3, 2003, Ex. 9 to Opp. of Creditors' to Motions in Limine.) First Data stated that it was undercapitalized with respect to its exposure from PSW transactions.Id. Therefore, although Creditors rely on this letter as proof that funds remain in the PSW reserve account, the letter actually indicates First Data's unwillingness, at a time shortly after Sinapi was hired, to return that money.
Creditors also rely on a letter from PSW's accountant that there was $1,500,000 remaining in the reserve account as of January, 2005. (Letter of Perrault to Shine, Ex. 10 to Cred's Obj.) However, the accountant obtained that figure from Lombardi, not from First Data, so it is unreliable hearsay. Id. (stating that "John Lombardi or an employee of PSW, Inc. would obtain this number by contacting First Data Corp. directly, either verbally or by email. He would then contact our firm with the balance/figure").
As additional evidence that First Data never would have paid PSW any reserve funds, in its March 2006 pleading, First Data alleged that of the $1.5 million in PSW's reserve account, approximately $960,000 was debited in August, 2004 because of fines imposed by MasterCard. (Demand for Jury Trial 23-31, ¶ 44, Ex. E to Sinapi Appx. Supp. Fee Application, Nov. 10, 2006.) They then proceeded to bring additional claims for damages flowing from PSW transactions, indicating their position that PSW's liability exceeded any reserve amounts. Id. ¶ 53.
Finally, the parties to the agreements — Sinapi and Lombardi on behalf of PSW — all agree in their affidavits that any monetary recovery should be considered damages under the contingent fee agreements, without excluding reserve funds. (Sinapi Aff., ¶¶ 3, 4; Lombardi Aff. (Sinapi), ¶¶ 3, 4.) In addition, Sinapi has submitted the affidavits of two other individuals with knowledge of the agreement whose interpretations agree with Sinapi's. (Formisano Aff., ¶¶ 3, 4; Fay Aff., ¶¶ 3, 4.) While Sinapi's memorandum contains some naked, unsupported assertions which would be more appropriate in an affidavit, the record clearly demonstrates that the First Data defendants were not willing to release any reserve account funds to PSW in the absence of litigation.
Our Supreme Court has remarked in another context that "we are quite certain that any good lawyer can pick lint off any Government procurement." Blue Cross Blue Shield v. Najarian, 865 A.2d 1074, 1084
(R.I. 2005). Similarly, words in a contract do not become ambiguous simply because clever "lawyers or laymen contend for different meanings." Marcolini v. Allstate Ins. Co., 160 Conn. 280, 284 (Conn. 1971); see Textron, Inc. v. Aetna Casualty Sur. Co., 638 A.2d 537, 539
(R.I. 1994) (noting that a Court should not "stretch its imagination in order to read ambiguity into a [writing] where none is present.").
The Court finds that, in the context of the First Data litigation, it would have to stretch its imagination to find ambiguity in the Sinapi Agreement. The record before the Court clearly demonstrates that the First Data defendants would not willingly have returned any of the reserve account funds because they believed that they were entitled to keep the funds. In light of this conclusion, Sinapi's contingent fee agreement is unambiguous and can be given only one interpretation — that the entire settlement amount constitutes damages for purposes of calculating the contingent fee. Therefore, the Court will deny Creditor's request for a hearing with respect to the Sinapi Agreement. This decision renders moot the discovery motion as it relates to Sinapi, so the Court will deny the discovery motion to that extent.
Steiner's Fee Agreement
The arrangement between Steiner and PSW appears to have arisen from conversations between Lombardi and Steiner that were memorialized in the Steiner Retainer Letter on June 29, 2004. The Creditors argue that since the Steiner Retainer Letter makes reference only to "the recovery from First Data," and since First Data Corporation did not contribute any funds to the $1,060,000 settlement, Steiner is not entitled to any fee.See Steiner Retainer Letter.
In the First Data litigation, there were four defendants: Visa U.S.A., Inc. (Visa), Mastercard International, Inc. (Mastercard), FFB, and FDMS. According to the settlement agreement, FFB and MasterCard would contribute $500,000 each, and Visa would contribute $60,000 to the settlement. (Settlement Agr. ¶ 4, Ex. B to Sinapi Appx. Supp. Fee Application.) Therefore, it is true that no defendant named "First Data" contributed financially to the settlement. In fact, according to Steiner, there was no defendant in that lawsuit exactly named First Data: while FFB and FDMS are subsidiaries of an entity known as First Data Corporation,[2] that entity was not a party to the suit. Steiner argues, however, that the retainer letter's reference to "First Data" was merely short-hand for the entire lawsuit, and not limited merely to recovery from a specific defendant named "First Data."
With respect to the Steiner's fee agreement, the parol evidence rule cannot be used to exclude evidence. The only writing before the Court at this point is the Steiner Retainer Letter which is not an integrated expression of the agreement between the parties. By its own words, it merely references an oral agreement that was made earlier. Clearly, the understanding between the parties extends beyond the writing. For example, no mention of the treatment of litigation costs is given in the writing, nor is there any mention of whether settlement or appeal affects the stated contingency fee. Therefore, because the writing is not an integration, parol evidence is admissible, and the Court will deny Steiner's motion to exclude.
Moreover, the writing that does exist is ambiguous as to its meaning. Steiner was brought into the litigation at the same time that the FDMS and FFB were added to the litigation as defendants, lending plausibility to the Creditor's argument that his fee was limited to recoveries from the First Data defendants. See Steiner Retainer Letter (referring to the "litigation against First Data Corporation that is being integrated into the MasterCard Visa litigation handled by [PSW's] Rhode Island lawyers"). Though it has not yet been conclusively shown by the Creditors, it is conceivable that Steiner's recovery was to be limited to recoveries from the First Data defendants and not Visa or MasterCard. Therefore, the writing is ambiguous as to its meaning, and whether the Court eventually finds for Steiner or for the Creditors, extrinsic evidence is needed to prove the meaning of the fee agreement between PSW and Steiner.
The extrinsic evidence available to the Court in construing the Steiner Retainer Letter are affidavits from Lombardi and Steiner, so the Court must consider whether those are sufficient to establish Steiner's entitlement to fees. At this stage, the Court will treat the affidavits as it would consider affidavits in a motion for summary judgment, using caution in relying upon them, and resolving all reasonable factual inferences in favor of the non-moving party, to establish the absence of a material fact regarding Steiner's entitlement to payment.
As the person seeking payment, Steiner obviously has a bias that the Court must consider at this stage. As to Lombardi's affidavit, it states that Lombardi "is familiar with the content and meaning of that certain Fee Agreement dated August 18, 2003. . . entered into between" PSW and Steiner's firm. (Lombardi Aff. (Steiner), ¶ 1.) The affidavit also confirms that it was the intent of the parties "that the contingent counsel fee of 10% of any recovery regarding First Data referred to the case in its entirety, and all defendants and their related entities." (Lombardi Aff. (Steiner), ¶ 3). However, the date cited is the date of the Sinapi Agreement, not the Steiner Retainer Letter, and it appears that the affidavit was reworked from the similar Lombardi affidavit submitted by Sinapi in his papers. Given that Lombardi signed an affidavit with a date that is clearly incorrect, the Court questions how much he read before he affixed his signature.[3] While the Creditors have not yet set forth any affirmative evidence of their own to support their interpretation, at this stage that failure is understandable. Only Steiner and Lombardi, and not the Creditors, can reasonably be expected to have personal knowledge of the agreement, and the Creditors' discovery requests thus far have yielded only a colorful trail of emails and letters. On the basis of the record before it, and out of fairness to the Creditors, the Court is not yet prepared to grant Steiner's fee request. Therefore, the Court will grant the Creditors' request for an evidentiary hearing so that Steiner, and perhaps Lombardi, can present evidence on the record as to the nature of the contingent fee agreement.
As to the discovery motion, the Creditors have asked the Court to order the production of a variety of documents relating to the First Data litigation. Although Sinapi objected to the discovery request, Steiner has not filed any objection to it. On that basis, the Court is inclined to grant the motion as to Steiner. However, Sinapi's objection raised the issue of whether the two special counsels, as non-parties "involved in informal, voluntary discovery," are even subject to a motion to compel under the Superior Court Rules of Civil Procedure, and the Court will address this issue. (Sinapi Obj. to Discovery Mot., Nov. 10, 2006.)
Aside from the Rules of Civil Procedure, there exists an independent basis for the Court to grant the Defendants' requested relief. The Court has broad power under the relevant statutes to control the proceedings in a receivership. See G.L. 1956 § 7-1.2- 1316(a) ("In proceedings to liquidate the assets and business of a corporation the court has general equity jurisdiction and power to issue any orders, injunctions, and decrees that justice and equity require. . . and to take any other proceedings that are requisite to preserve the corporate assets wherever situated.) The Court finds that the proceedings incident to the fee application are a necessary part of this Court's power to preserve the corporate assets — i.e., the contingent fee lawsuit recovery. Therefore, this Court has the power to order Steiner to produce the requested documents as a condition of granting his fee application.
In general, the Creditors' requests for production are overbroad and burdensome as to Steiner. As noted above, the Creditors have failed to provide any indication that the defendants to the First Data litigation would willingly have repaid any "reserve" funds to PSW. Therefore, there is no need for Steiner to expend the resources necessary to produce the requested accountings, data compilations, or communications pertaining to reserve funds.[4] See Request for Production ¶¶ 5-10, Aug. 29, 2006. Even if arguably relevant to the Sinapi agreement, the Creditors have not demonstrated that such documents are relevant to determining whether Steiner's contingent fee agreement with PSW applies to recoveries from all Defendants, or simply FFB and/or FDMS.
However, the Creditors' motion also seeks "[a] copy of all retainer agreement[s] Mr. Steiner and/or his law firm have entered into with PSW," (Expedited Mot. to Compel 7, Nov. 9, 2006), consistent with their original request for the "final version" of [Steiner's retainer agreement], agreements which pre-date the final version of the retainer agreement, and copies of all draft retainer agreements. (Request for Production ¶ 1-3.) In addition, their motion seeks any other documents that are responsive to the document production request, which included "documents that reflect communications between you and PSW relating to the formation or modification of [Steiner's] retainer agreement"[5]
and copies of "any documents [Steiner] intend[s] to present and/or otherwise rely upon to support" his entitlement to fees. (Request for Production ¶ 4, 13, 15.) The Court finds that these requests are relevant to the dispute over Steiner's fees, and that Creditors are entitled to responses.
Therefore, the Court will order Steiner to produce all documents, if any exist,[6] which are responsive to requests 1-4, 13, and 15, other than the Steiner Retainer Letter which has already been disclosed.[7]
These requests include any documents on which Steiner intends to rely for his position that his contingency fee applies to recoveries from all defendants of the First Data litigation. If none exist, then Steiner should clarify this point. Obviously this Court will not permit Steiner to rely upon documents at the fee hearing that were not disclosed pursuant to this decision.
The Court is concerned that requiring Steiner to fly from California for an evidentiary hearing will be expensive, and in combination with the Receiver's fees, the expense of a hearing may significantly and adversely impact the non-objecting creditors of the receivership. Therefore, the Court urges the Creditors to carefully evaluate their position, after the receipt of any discovery responses, before proceeding to an evidentiary hearing. If the basis of their argument turns out to be frivolous or without any factual support, the Court may order the costs of the hearing to be charged to their portion of the receivership estate, as a sanction, so as not to harm the other non-objecting creditors of the estate.
 Conclusion
After due consideration of the arguments advanced by counsel, the Court denies the Sinapi motion to exclude evidence but grants the Sinapi motion for fees and costs without an evidentiary hearing. The Court will grant the Creditors' request for an evidentiary hearing on Steiner's motion for fees and costs. The Court will deny as moot the discovery motion as it relates to Sinapi, but consistent with the foregoing, the Court will order Steiner to produce any retainer agreements with PSW and any other documents on which Steiner intends to rely for his entitlement to fees and costs. The Receiver shall present an order consistent herewith after due notice to counsel of record.
[1] Both Sinapi and Steiner have proffered affidavits from Lombardi corroborating their respective positions. To avoid confusion, the Court indicates in parentheses which Lombardi affidavit is being referenced.
[2] PSW alleged in the prior litigation that FFB and FDMS were wholly owned subsidiaries of First Financial Management Corporation, which in turn was wholly owned by First Data Corporation. (First Am. Compl. ¶ 7, Ex. C to Sinapi App. for Payment of Counsel Fees, Nov. 10, 2006.) The Defendants in the prior litigation denied this allegation without explanation. (FFB/FDMS Ans. ¶ 7, Ex. E to Sinapi App. for Payment of Counsel Fees, Nov. 10, 2006.) Therefore, while it appears that there is some relationship, the exact nature of the relationship between the entities is unclear.
[3] As an aside, it appears that many of Steiner's papers in this case, such as the motion in limine, were reworked versions of those submitted by Sinapi.
[4] From the Creditors' papers, it appears that they do not assert the reserve fund / damages argument against Steiner, although the discovery request clearly seeks information related to that argument from Steiner. Even if they did take that position, there is no basis for it since the Steiner Retainer Letter does not even refer to damages, but instead makes the contingency applicable to "the recovery from First Data."
[5] Note that documents falling within this last category need not be actual communications between Steiner and PSW, so long as they reflect communications between Steiner and PSW regarding the retainer agreement.
[6] The Court is hopeful that a detailed contingent fee agreement exists which would clarify the scope of the contingent fee arrangement, consistent with the Rhode Island Rules of Professional Conduct:
 "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated." R.I. Sup. Ct. Art. V, Rule 1.5(c).
[7] For completeness, the Court notes that Creditors are not entitled to responses for requests 5-10, and it appears that Steiner has satisfied requests 11-12. Request 14, which seeks "documents that [Steiner] believe[s] disproves any of the arguments and/or positions taken in [Creditor's April 27, 2006 brief]," is overbroad except as relates to the Creditor's position that the contingent fee applies only to recoveries from First Data Corporation, and to that extent it is addressed by requests 13 and 15.