METRO PROPERTIES, INC. et al.

v.

NATIONAL UNION FIRE
INSURANCE COMPANY
OF PITTSBURGH, PA.

v.

CVS, Inc. et al.

No. 2006–296–Appeal.

Supreme Court of Rhode Island.

Nov. 7, 2007.

Michael R. DeLuca, Providence, for Plaintiff.

Stanley F. Pupecki, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

This matter comes to us on the appeal of the defendant, National Union Fire Insur-

ance Company of Pittsburgh, Pennsylvania (defendant), from a Superior Court judgment in favor of Metro Properties, Inc. (Metro) and Travelers Property Casualty Company of America, formerly known as The Travelers Indemnity Company of Illinois (Travelers) (collectively plaintiffs). Also parties to this action are third-party defendants CVS, Inc. (CVS), Gold Car Realty (Gold Car), and its general partners, Anthony A. Carcieri and David Golden. This case came before the Supreme Court for oral argument on September 25, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

CVS owned property located at 75 Sabin Street in Pawtucket and rented property located at 39 Sabin Street in Pawtucket from Gold Car. Metro was the real estate manager for the buildings on both sites during late December 1998 and early January 1999. On December 31, 1998, and January 3, 1999, pipes located at both locations froze and split, resulting in property damage. At the time of the loss, Travelers insured Metro with commercial property coverage and commercial general liability coverage. The defendant provided CVS with insurance coverage under a commercial general liability policy (the policy).

In a related matter, CVS filed suit against Metro in Superior Court, seeking damages in excess of $1.5 million, alleging that Metro negligently maintained the property and allowed the pipes to freeze. Metro then filed the instant complaint, seeking a declaratory judgment to confirm that, as CVS's real estate manager, Metro was an insured under defendant's insurance policy. The defendant filed a counterclaim against Metro and a complaint against CVS and Gold Car, seeking a declaration that Metro was not covered under the policy based on the exclusionary language contained in the policy. Additionally, defendant sought a declaration stating that to the extent any coverage was afforded to Metro, there would be a self-insured retention of $250,000. The defendant impleaded, as third-party defendants, CVS, Gold Car, and its general partners, Carcieri and Golden. Thereafter, defendant moved for summary judgment. Although Metro objected, Metro did not file a cross-motion for summary judgment. The motion justice granted the motion in part and denied it in part. Specifically, the motion justice granted the motion as to the applicability of the self-insured retention of $250,000, but denied the motion with respect to defendant's argument that the policy offered no coverage to plaintiff. Pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, the motion justice certified the summary judgment order as final. The defendant timely appealed.

## II

### Analysis

On appeal, defendant argues that Metro is not covered by the policy and that, therefore, the motion justice erred by denying defendant's summary-judgment motion. Metro, however, contends that this appeal is not properly before this Court, arguing that a denial of a summary-judgment motion is interlocutory in nature and thus not appealable. Further, Metro ar-

gues that the motion justice erred in entering Rule 54(b) certification in this matter. Finally, Metro contends that it is an insured and is covered by the policy and, therefore, the motion justice properly denied defendant's motion.

## A

### Standard of Review

■ On appeal, this Court reviews summary judgment motions *de novo*, applying the same standards as the motion justice. *Rodrigues v. DePasquale Building and Realty Co.*, 926 A.2d 616, 622 (R.I.2007). Summary judgment is proper if "no genuine issues of material fact are evident from the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and, in addition, the motion justice finds that the moving party is entitled to prevail as a matter of law." *Lavoie v. North East Knitting, Inc.*, 918 A.2d 225, 227–28 (R.I. 2007) (quoting Super. R. Civ. P. 56(c)). In completing our review, this Court will examine all evidence in a light most favorable to the non-moving party. *Dallman v. Isaacs*, 911 A.2d 700, 704 (R.I.2006).

## B

### Rule 54(b) Certification

■ Pursuant to G.L.1956 § 9–24–1, an appeal may be taken only from a "final judgment, decree, or order of the superior court." We prefer to "avoid piecemeal appellate review by delaying entry of judgment until all claims involving all parties are ripe for disposition and entering judgment as to all only when that time arrives." Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 54:3 (West 2006). A judgment is final when it "terminate[s] all litigation arising out of the cause between the parties on the merits." *Pearson v. Old Stone Savings Bank*, 119 R.I. 836, 839, 383 A.2d 1029, 1030 (1978). Although the denial of a motion for summary judgment is not a final disposition, this Court will, in certain circumstances, consider an interlocutory decree final for the purposes of appeal. *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 576, 410 A.2d 986, 989 (1980).

■ Pursuant to Rule 54(b), a motion justice may certify an interlocutory disposition as a final judgment if two considerations provided for in the rule are met. *Dial Media, Inc.*, 122 R.I. at 576, 410 A.2d at 989. *See* Rule 54(b). In reviewing a Rule 54(b) certification, this Court must consider first whether the motion justice properly determined that the action below involved either multiple parties or multiple claims and whether the lower court's disposition adjudicated one or more but fewer than all of the claims before it. *Dial Media, Inc.*, 122 R.I. at 577, 410 A.2d at 989. Secondly, this Court will consider whether the motion justice "properly determined that there was no just reason for delay." *Id.* This determination is reviewed under an abuse of discretion standard. *Id.* In exercising his or her discretion, the motion justice "must take into account judicial administrative interests as well as the equities involved." *Astro–Med, Inc. v. R. Moroz, Ltd.*, 811 A.2d 1154, 1156 (R.I.2002) (quoting *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). Thus, a motion justice should consider any "transactional relationship between a remaining unadjudicated claim and a claim that has been disposed of," as well as the possibility of overlapping appeals, and uneconomic use of judicial resources. *Id.* at 1156–57. Rule 54(b) further indicates that counterclaims and cross-claims are separable units for applying its multiple claims provisions. *See also Cold Metal Process Co. v. United*

*Engineering & Foundry Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 100 L.Ed. 1311 (1956) (interpreting the substantially similar federal rule).

■ In this matter, the motion justice entered a Rule 54(b) certification. By entering judgment in favor of plaintiff on the question of coverage under the policy, the motion justice rendered a final decision on this claim. The plaintiff maintains, however, that the motion justice erred in entering final judgment. Because the action below presented more than one claim for relief, and the motion justice's summary-judgment order concerning defendant's coverage clearly adjudicated one or more but fewer than all claims, the motion justice has fulfilled the first part of the two-part test set forth above. The motion justice likewise has fulfilled the second part, which requires an express determination that there was no just reason for delay. This Court does recognize that an unadjudicated claim raises the possibility of overlapping appeals or uneconomical use of judicial resources. Conversely, the unadjudicated claim in the instant matter, concerning which insurance policy is primary versus which is secondary, is uncomplicated, and the litigation thereof does not present a just reason for delay. For these reasons, we perceive no abuse of discretion in the motion justice's application of Rule 54(b). Thus, the appeal from the certified summary-judgment order is properly before us.

## C

### Insurance Coverage

■ The dispositive issue in the instant case, whether plaintiff was covered by the policy, requires judicial construction of the policy language. This Court re-

views a motion justice's interpretation of an insurance policy *de novo. Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003). It is well established that "[w]hen 'interpreting the contested terms of [an] insurance policy, we are bound by the rules established for the construction of contracts generally.'" *Id.* (quoting *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983)). When the terms of an insurance policy are unambiguous, this Court will give the words, when read in conjunction with the entire policy, their plain and ordinary meaning. *Id.* The test is not what the insurer subjectively intended, but rather "what the ordinary reader and purchaser would understand [the terms] to mean." *Id.* If a policy contains ambiguous terms that are capable of more than one reasonable meaning, we will strictly construe the policy in favor of the insured and against the insurer. *Mallane v. Holyoke Mutual Insurance Co. in Salem,* 658 A.2d 18, 20 (R.I.1995) (citing *Aetna Casualty & Surety Co. v. Sullivan,* 633 A.2d 684, 686 (R.I. 1993)).

After examining the language, we conclude that the definition of "insured" is clear and unambiguous. The policy designates which persons and organizations qualify as insureds. CVS is the only named insured on the declarations page of the policy. Additionally, however, Section II of the policy provides as follows: "WHO IS AN INSURED * * * 2. Each of the following is also an insured: * * * b. Any person (other than your 'employee'), or any organization while acting as your real estate manager." There is no dispute that plaintiff is the real estate manager for CVS at 39 Sabin Street and 75 Sabin Street. Hence, because the policy clearly and unambiguously defines the real estate manager as an insured, plaintiff is an addi-

tional unnamed insured.[1]

The defendant contends that the motion justice erred in finding that the policy covered plaintiff for its claim. The defendant specifically relies on the provision setting forth coverage, which reads as follows:

"SECTION 1—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

2. Exclusions

This insurance does not apply to:

* * *

j. Damage to Property

'Property damage' to:

(1) Property you own, rent, or occupy."

Based on this language, defendant maintains that because CVS owned the property located on 75 Sabin Street and rented the property located on 39 Sabin Street, plaintiff was not covered for the property damage under the "own, rent, or occupy" exclusion. Because this Court ascertains the meaning of contractual language by reading the policy in its entirety, we will read the "own, rent, or occupy" exclusion in conjunction with the full insurance policy, and, in particular, the provision on cross-liability.

The policy contains a cross-liability provision, which reads:

"CROSS LIABILITY

In the event of claims being made by reason of Bodily Injury, Personal Injury, and/or Property Damage suffered by one Insured covered by this policy for which another Insured covered herein is or may be liable, this policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured covered herein. Nothing stated above shall operate to increase the Company's Limit of Liability."

The underlying action involved a claim by CVS against Metro, in which CVS alleged that Metro was liable for the property damage in question. The cross-liability provision, therefore, applies, because CVS, the named insured, had asserted a claim against an unnamed insured. In this instance, the cross-liability provision treats Metro as an insured with its own separate insurance policy. This provision requires that the "own, rent, or occupy" exclusion should be read separately concerning each insured. Therefore, once plaintiff is considered as having its own separate insurance policy, the "own, rent, or occupy" exclusion must be read in relation to plaintiff. The plaintiff, as real estate manager, does not own, rent, or occupy either property that experienced damage. Thus, when the "own, rent, or occupy" exclusion is read in conjunction with the cross-liability provision, plaintiff does not fall within the exclusion. Instead, plaintiff, and accordingly any property damage caused by plaintiff, falls within the general coverage of the policy, and the exclusion does not apply.

Several courts that have considered this issue extend coverage, despite exclusionary language, based upon either a cross-

---

1. Moreover, defendant admits, for purposes of this appeal, that Metro meets the definition of an insured under defendant's policy.

liability provision or a severability-of-interests clause. In *State of Alaska v. Underwriters at Lloyds, London,* a Japan Airlines plane slid off an icy taxiway at Anchorage International Airport. *State of Alaska v. Underwriters at Lloyds, London,* 755 P.2d 396, 397 (Alaska 1988). When the airline and its property insurer sued the state of Alaska, which owned the airport, the state sought coverage through the airline's liability insurer.[2] *Id.* The policy contained an exclusion from coverage for " 'any aircraft owned by, hired by or for, or loaned to the Insured or to any aircraft in flight by or in the interest of the Insured.' " *Id.* at 399. In addition, the policy contained a cross-liability provision, which stated that " 'this Policy shall protect each corporation, person, organization, firm or entity in the same manner, as though a separate Policy had been issued to each.' " *Id.* In light of the cross-liability provision, the Alaska court held that the exclusion must be read in relation to each insured. *Id.* at 400. Thus, because the state did not own the aircraft, the exclusion did not apply to the state, and the insurer was obligated to provide coverage. *Id. See also St. Katherine Insurance Co. v. Insurance Company of North America, Inc.,* 11 F.3d 707, 710 (7th Cir.1993) (construing a severability-of-interest clause as providing coverage to an insured, despite ownership exclusions); *Pennsylvania National Mutual Casualty Insurance Co. v. Bierman,* 266 Md. 420, 292 A.2d 674, 678 (1972) ("[M]ost courts now interpret 'Severability of Interests' clauses as expressing an acknowledgment on the part of insurance companies that the term 'insured' does not always mean *any* insured who could claim coverage under the policy but only the insured claiming coverage.").

After examining the language in the cross-liability provision, we conclude that the terms are clear and unambiguous. This provision does not render unreasonable the expectation that an unnamed insured would receive greater coverage under the terms of the policy than the named insured. We agree with the motion justice that the most accurate interpretation of the policy language is that the plaintiff is an unnamed, yet clearly defined insured and that, in applying the cross-liability provision to the plaintiff, the plaintiff is covered under the policy. Consequently, in accordance with the plain language of the policy, the defendant must pay the plaintiff those damages as a result of property damage, subject to the $250,000 deductible.

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record shall be remanded to the Superior Court.

---

2. The state was an additional insured under the airline's insurance policy. *State of Alaska v. Underwriters at Lloyds, London,* 755 P.2d 396, 397 (Alaska 1988).