**Lou Ann LAURO**

v.

**Kenneth G. KNOWLES, M.D., et al.**

No. 98–74–Appeal.

Supreme Court of Rhode Island.

Oct. 21, 1999.

Thomas J. Fay, Boston, MA, Michael T. Sullivan, Amato A. DeLuca, Providence, for Plaintiff.

Joseph A. Kelly, Berndt W. Anderson, Providence, for Defendants.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this medical-malpractice case, the plaintiff, Lou Ann Lauro, seeks to impose "captain of the ship" liability upon an orthopedic surgeon for an eye injury she suffered in the operating room. A Superior Court motion justice granted summary judgment in favor of the defendant, Kenneth Knowles, M.D. (Dr. Knowles), from which judgment the plaintiff now appeals. We ordered the parties to show cause why we should not resolve this appeal summarily. None having been shown, we proceed to do so.

On May 24, 1988, Dr. Knowles operated on plaintiff to alleviate carpal tunnel syndrome in her right wrist. He performed the surgery at St. Joseph Hospital (hospital); Tejinder Saingh Saluja, M.D. (Dr. Saluja), was the anesthesiologist; Judith Baker (Baker), a student-registered-nurse anesthetist, assisted by providing anesthesia services during the surgery. It is undisputed that when plaintiff awoke from surgery she suffered from an abrasion to the cornea of her right eye, an injury she allegedly sustained in connection with the administration of anesthesia (during either the taping shut of her eyes or in the course of some other anesthesia-related procedure).

In 1989 plaintiff filed a complaint against Dr. Knowles and the hospital. In 1992 she amended her complaint and added Dr. Saluja, Baker, and Associates in Anesthesia as defendants. However, these later-added defendants successfully moved for summary judgment because the statute of limitations barred plaintiff's claims against them. We affirmed that judgment in *Lauro v. Knowles*, 668 A.2d 1266 (R.I. 1995) (mem.). In due course Dr. Knowles and the hospital also moved for summary judgment with respect to plaintiff's remaining claims. After a hearing, the Superior Court granted summary judgment for Dr. Knowles, denied the hospital's motion, and entered judgment in favor of Dr. Knowles pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure (allowing the court to direct entry of judgment on fewer than all claims against all parties upon determining no just reason for delay). The plaintiff appeals from this judgment.

On appeal, plaintiff argues that under the agency principle known as the "captain of the ship," Dr. Knowles was responsible as the operating-room surgeon for any negligence that occurred in that room that caused harm to his patient. In support of this doctrine, which has never been adopted in this state, plaintiff cites to several cases from other jurisdictions that adhere to this theory.[1] In those cases, however, questions of fact existed regarding whether the surgeon had authority or control over the anesthesiology team in the operating room. Here, Dr. Knowles testified at his deposition that he assumed plaintiff was prepped and had already

---

1. *Compare, e.g., Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978) (holding that evidence supported the jury's finding of captain-of-the-ship liability when the surgeon admitted having the authority to cancel and thereby control the anesthesiologist's procedures at any time) *with Franklin v. Gupta*, 81 Md.App. 345, 567 A.2d 524, 539 (1990) (rejecting the captain-of-the-ship doctrine, the court applied instead the "borrowed servant" rule, holding the surgeon liable only if the evidence showed that he or she "had or exercised the right to control the details of another person's work or conduct in the operating room").

been given anesthesia when he walked into the operating room. He said that he had nothing to do with the administration of anesthesia or with the anesthesiology team stationed at the head of the operating table. Rather, he claimed, these functions were the responsibility of the anesthesiologist and the other members of that team who were present during the operation. Also, plaintiff's attorney admitted during argument of the summary-judgment motion that Dr. Knowles had no direct control over the application of anesthesia to this patient.[2]

▇▇▇ In short, plaintiff failed to introduce any evidence that Dr. Knowles had any actual control over the administration of anesthesia in the operating room or over the conduct of the anesthesiology-team members who were present. The plaintiff argues that although Rhode Island has not yet adopted the captain-of-the-ship theory, under settled agency law it is a question of fact whether an agency relationship existed between Dr. Knowles and any anesthesiologists or anesthetists who were present in the operating room. An agency relationship arises when three elements coexist: (1) the principal manifests that the agent acts for him or her, (2) the agent accepts the undertaking, and (3) the parties agree that the principal will be in control of the undertaking. *Rosati v. Kuzman,* 660 A.2d 263, 265 (R.I.1995). The essence of the relationship is the right to control the work of the agent. *Id.*

The plaintiff cites Dr. Knowles' deposition testimony wherein he testified that he requires an anesthetist to be in the room during a surgical procedure whenever a patient presents a "terrible" risk for anesthesia and that it is his practice that an anesthetist or a nurse anesthetist "has to be" in the room during an operative procedure. She argues that this evidence proves that Dr. Knowles had the right to control the anesthesiology team in the operating room. But such proof does not show that Dr. Knowles was able to control in detail what the anesthesia personnel actually did when they were present in the operating room or when they were preparing the patient for anesthesia. Assuming without deciding that plaintiff's captain-of-the-ship theory might have some validity in certain factual circumstances not present here,[3] we hold that the proof in this case failed to create a genuine issue of material fact because plaintiff did not introduce evidence from which a factfinder could conclude that the operating-room surgeon controlled the work or conduct of the anesthesia personnel who supposedly caused plaintiff's corneal abrasion.

▇▇▇ Next, plaintiff argues that under the theory of res ipsa loquitur, the court should not have granted summary judgment for defendant. Res ipsa loquitur requires the occurrence of an event that would not happen without negligence, committed by an agent who was acting within the exclusive control of a defendant and without any contributory or voluntary action by the plaintiff. *Voyer v. New England Chemical Co.,* 634 A.2d 1175, 1176 (R.I.1993) (mem.) (citing Prosser, *Law of Torts* 214 (4th ed.1971)). Again, in light of the dearth of evidence showing that Dr. Knowles controlled the anesthesiology team or that he otherwise had any role in causing plaintiff's eye injury, summary judgment on this issue was proper.

2.  Later in the argument, plaintiff's attorney again failed to contest Dr. Knowles' professed lack of control over the anesthesia administered in connection with the operation:

    "THE COURT: He still doesn't control the anesthesiologist who applies the anesthesia, even if he picks him.
    "MR. DELUCA: That may be so, but under the doctrine of res ipsa loquitur—."

3.  *But see, e.g., Franklin v. Gupta,* 567 A.2d at 539 (rejecting captain-of-the-ship doctrine and holding the surgeon liable only if he exercised control over the details of another person's work or conduct in the operating room); *see generally,* Frank McClellan, *American Law Institute, Litigating Medical Malpractice Claims: Tort Liability of Physicians, Hospitals and Other Health Care Providers* 39 (1997).

Last, plaintiff argues that the trial judge erroneously granted summary judgment in favor of Dr. Knowles on her claim that the doctor did not obtain her informed consent to the surgical procedures in question. This Court first discussed the theory of informed consent in *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972), wherein a thirty-three-year-old woman sustained permanent injury to her chest and back as a result of radiation therapy for what was believed to be cancer. She alleged that her doctors had failed to obtain her knowing consent to the treatment. *Id.* at 612, 295 A.2d at 681. This Court recognized that when the patient authorizes a medical procedure but contends that he or she was not informed of the risks involved, the resulting claim sounds in negligence. *Id.* at 621, 295 A.2d at 686. The *Wilkinson* Court went on to rule that a decision concerning what constitutes material information that must be communicated to the patient "does not necessarily require the assistance of the medical profession" *id.* at 625, 295 A.2d at 688, since this would tend to undermine the "very basis of the informed consent theory—the patient's right to be the final judge to do with his [or her] body as he [or she] wills." *Id.* Thus, the Court stated:

> "[T]he patient is entitled to receive material information upon which he [or she] can base an informed consent. The decision as to what is or is not material is a human judgment, in our opinion, which does not necessarily require the assistance of the medical profession. The patient's right to make up his mind should not be delegated to a local medical group—many of whom have no idea as to his [or her] informational needs. The doctor-patient relationship is a one-on-one affair. What is a reasonable disclosure in one instance may not be reasonable in another. This variability negates the need of the plaintiff showing what other doctors may tell other patients." *Id.*

In *Wilkinson* we concluded that—notwithstanding the absence of any expert testimony on this subject—a jury should decide whether the doctor disclosed enough information to enable the patient to make an intelligent choice concerning a proposed medical procedure. *Id.* We then indicated that the doctor need not disclose obvious risks known to the average person. *Id.* at 627, 295 A.2d at 689. We reasoned as follows:

> "It is not necessary that a physician tell the patient any and all of the possible risks and dangers of a proposed procedure. *Getchell v. Mansfield,* [260] Or. [174], 489 P.2d 953 (1971). As we noted earlier, materiality is to be the guide. It is our belief that, in due deference to the patient's right to self determination, a physician is bound to disclose all the known material risks peculiar to the proposed procedure. Materiality may be said to be the significance a reasonable person, in what the physician knows or should know is his patient's position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgery or treatment. Waltz and Scheuneman, *Informed Consent to Therapy,* 64 Nw. U.L.Rev. 628, 640 (1970). Among the factors which point to the dangerousness of a medical technique are the severity of the risk and the likelihood of its occurrence. A very small chance of death or serious disablement may well be significant; a potential disability which dramatically outweighs the potential benefit of therapy or the detriments of the existing malady may require appropriate discussions with the patient. *Canterbury v. Spence* [150 U.S.App.D.C. 263, 464 F.2d 772 (1972)], *supra.* A physician's liability in this area is to be judged on the basis of what he told the patient before treatment began. Liability should be imposed only if the trier of fact finds the physician's communication to be unreasonably inadequate. *Canterbury v. Spence, supra.* The imposition of a duty of making disclosure is tempered by the recognition that there may be a situation

where a disclosure should not be made because it would unduly agitate or undermine an unstable patient. *Stauffer v. Karabin,* [30] Colo.App. [357], 492 P.2d 862 (1971); *DiFilippo v. Preston,* 53 Del. 539, 173 A.2d 333 (1961); *Natanson v. Kline [*186 Kan. 393, 350 P.2d 1093 (1960)*], supra.*" *Wilkinson,* 110 R.I. at 627–28, 295 A.2d at 689.

Recently, in *Flanagan v. Wesselhoeft,* 712 A.2d 365 (R.I.1998), we affirmed *Wilkinson* in the context of a parent's prerogative to elect surgery for her eleven-month-old child on a small cervical node in the child's neck. We concluded that "informed consent is not possible when a physician has failed to address both the material risks associated with and the viable alternatives to a recommended surgical procedure." *Id.* at 371.

Here, we hold that the Superior Court granted summary judgment prematurely with respect to the informed-consent issue. To be sure, not every lack-of-informed-consent claim automatically requires a jury determination; for example, the possibility of a patient suffering an adverse consequence from a proposed medical procedure may be so remote or of such relatively trivial impact that summary judgment may be proper. In this case, however, the motion justice failed to address this aspect of plaintiff's complaint specifically. Nor did he consider whether an operating surgeon like Dr. Knowles has any duty to obtain the patient's informed consent to undergoing the risks of anesthesia or other ancillary medical procedures that may become necessary in connection with the operation. Thus the Superior Court has yet to determine the legal viability of this type of informed-consent claim against this orthopedic surgeon, let alone whether any genuine issues of material fact exist with respect to this claim.

Therefore, we sustain the appeal with respect to the informed-consent claim, vacate the summary judgment to the extent that it dismissed the plaintiff's lack-of-informed-consent claim, and remand this case to the Superior Court for further proceedings consistent with this opinion. Upon remand, the Superior Court should resolve whether Dr. Knowles (as opposed to or in addition to the anesthesiologist) owed any legal duty to the patient to obtain her informed consent to the anesthesia-related facets of the operation and, if so, whether any genuine issue of material fact exists concerning Dr. Knowles' alleged breach of his duty to obtain the plaintiff's informed consent to these phases of her surgery. In all other respects, we affirm the summary judgment entered in favor of Dr. Knowles.

Chief Justice WEISBERGER did not participate.