DECISION
Before this Court are four motions in limine to exclude certain pieces of evidence in the underlying medical malpractice action. For reasons discussed herein, this Court shall only rule on the motions in limine[1]
brought by Ronald Fischer, M.D. (Fischer) and The Memorial Hospital (Memorial), B. Genga (Genga) and Debra Murnighan (Murnighan) (collectively defendants) seeking a preliminary evidentiary hearing in order to preclude expert testimony.
 FACTS AND TRAVEL
Lucille Santos (plaintiff) alleges that the negligence of defendants caused the rupture of her right pulmonary artery during surgery. Plaintiff specifically alleges that Fischer negligently placed a "Swan Ganz" catheter in her artery and caused it to rupture. Plaintiff filed suit on January 10, 1997. Pursuant to R.I. R. Evid. 104 (Rule 104), defendants have filed the present motion in limine in order to conduct a preliminary evidentiary hearing to preclude plaintiff's expert, Dr. Thomas Poulton (Dr. Poulton), from testifying. Also before this Court is defendants' second motion in limine to preclude plaintiff from utilizing the doctrine of res ipsa loquitur.
Defendants argue that this court should conduct a preliminary "Daubert" hearing because plaintiff's expert, Dr. Poulton, lacks experience in terms of pulmonary artery ruptures and has failed to offer any medical literature in support of his opinion. Plaintiff objects to defendants' motion, arguing that Dr. Poulton is a board certified anesthesiologist, who will testify regarding medical procedures which are not novel and have been tested and reviewed for some thirty years.
 ANALYSIS I) Defendants' motion in limine for a preliminary evidentiary hearing pursuant to Rule 104 to preclude expert testimony by plaintiff's expert witness, Dr. Poulton
"The weight of authority and the reported cases generally conclude that a preliminary assessment of the expert's testimony should occur before trial, but in any case, in limine." DiPetrillo v. Dow Chemical Co.,729 A.2d 677, 687 (R.I. 1999). "An `appropriate objection or motion' is one that `alert[s] the trial justice to the need for holding a preliminary evidentiary hearing.'" Id. at 684 (citing State v.Quattrocchi, 681 A.2d 879, 884 n. 3 (R.I. 1996) (emphasis added)). TheDiPetrillo court observed that a party requesting a hearing under Rule 104 must specify upon what grounds the testimony of the expert in question may be considered defective. Id. "A proper motion would have alerted the trial justice by presenting a sufficient affidavit or offer of proof. . . ." Id. at 683. The DiPetrillo court found that the defendant in that matter insufficiently moved for a hearing under Rule 104 as it had made no offer of proof and did not file any memorandum in support of its motion in limine. Id. at 684. "An evidentiary hearing, however, is not automatically mandated in every case. Only when a party squarely alerts the trial justice that scientific or medical evidence is at issue and makes a threshold showing, by affidavit or offer of proof, that the evidence is derived from a valid scientific theory will the need for a DiPetrillo or Daubert hearing be triggered. Roe v. Gelineau,794 A.2d 476, 483 (R.I. 2002) (citing DiPetrillo, 729 A.2d at 683-84). A trial justice should liberally grant a motion in limine to conduct a preliminary hearing under Rule 104 once the moving party has provided a sufficient offer of proof bringing into question the reliability of the expert at hand.
The DiPetrillo court also cited Professor Fenner for the proposition that "`early pretrial Rule 104(a) hearings with serious consideration of the motion in limine benefits everyone: the judge, the jury, the lawyers, the parties, everyone.'" Id. at 687 (citing G. Michael Fenner,The Daubert Handbook: The Case, Its Essential Dilemma, and its Progeny, 29 Creighton L. Rev. 939, 957 (1996). "Early Rule 104 hearings serve to educate the judge in the special vocabulary of the relevant science before the evidence is introduced at trial, and such hearings can be more cost effective for the parties if issues are resolved prior to trial."DiPetrillo at 687-88. The increasing complexity of medical malpractice litigation more often involves "complex and/or novel scientific and technical evidence . . ." and therefore "the trial justice must control the gateway for expert scientific testimony by conducting pursuant to Rule 104 an early, preliminary assessment of the evidence." Id. at 686. Further, a preliminary determination may be made at a
Rule 104 hearing concerning the potential exclusion of evidence pursuant to Rule 403. Id. However, a preliminary hearing is not required when:
 "`[A]n expert's expertise is so common and well understood that the necessary foundation can be laid while qualifying the witness as an expert during the trial, on the stand, in front of the jury. There may be no need for a separate hearing. If the expert's evidence is not novel, then the foundation need not be novel either.'" Id. (citing 29 Creighton L.Rev. at 948).
A Rule 104 hearing should be conducted as requested by defendants. This Court has analyzed the deposition testimony of Dr. Poulton and finds that his testimony is just vague enough to warrant a Rule 104 hearing. For example, the following is taken from Dr. Poulton's deposition:
 "Q. Doctor, can you point me to any study that has actually examined that question and come to the conclusion that you have just given me, whether prospective or retrospective?
 A. Just looking at my Subpoena Duces Tecum, you didn't ask me to bring any reports. I did not literature search. I wish I had known you wanted me to.
 Q. I'm asking you, Doctor, from your medical knowledge, can you provide me with any study that you are aware of as an expert witness and as a doctor that's been practicing in this field for more than 20 years, that has performed the study that you've just described and concluded that most pulmonary artery ruptures occur because the Swan-Ganz catheter has been placed too far distal?
 Mr. Szerlag: Objection. A. Sure sorry that I can't, but I promise you I'll have it ready for trial. I believe those studies exist.
 Q. You believe those studies exist, and did they exist as of 1994?
 A. Sure. I believe those are back from the eighties." Poulton Dep. at 45-6.
As the above reflects, Dr. Poulton's deposition testimony on causation remains unclear. Defendants' motion in limine to conduct a preliminary hearing is granted pursuant to Rule 104 and the liberal dictates ofDiPetrillo is granted.
 II) Should plaintiff be precluded from employing the doctrine of res ipsa loquitur?
"Where applicable, the doctrine of res ipsa loquitur `establishes inferential evidence of a defendant's negligence, thus making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury.'" McLaughlin v.Moura, 754 A.2d 95, 98 (R.I. 2000) (citing Errico v. LaMountain,713 A.2d 791, 795 (R.I. 1998) (quoting Marshall v. Tomaselli, 118 R.I. 190, 197 n. 3, 372 A.2d 1280, 1284 n. 3 (1977)). "Res ipsa loquitur requires the occurrence of an event that would not happen without negligence, committed by an agent who was acting within the exclusive control of a defendant and without any contributory or voluntary action by the plaintiff." Lauro v. Knowles, 739 A.2d 1183, 1185 (R.I. 1999) (citingVoyer v. New England Chemical Co., 634 A.2d 1175, 1176 (R.I. 1993) (mem.) (citing Prosser, Law of Torts 214 (4th ed. 1971)). Although the doctrine of res ipsa loquitur is not ordinarily available in medical malpractice actions, "the doctrine may be employed where the three conditions are satisfied, and the alleged neglect relates to conduct which lies within a layman's common knowledge or there is expert testimony that the injury complained of would not have occurred had the physician exercised due care. Tomaselli, supra at 1284-85 (citing Wilkinson v. Vesey, 110 R.I. 606,295 A.2d 676 (R.I. 1972)).
Plaintiff seeks to introduce the doctrine of res ipsa loquitur. With respect to res ipsa loquitur in the context of medical malpractice actions, G.L. 1956 § 9-19-33 provides:
 "In actions against licensed physicians, hospitals, clinics, health maintenance organizations, or professional service corporations providing health care services under chapter 5.1 of title 7 for malpractice in providing treatment to patients, the issue of res ipsa loquitur shall be a preliminary question of fact for the court to determine. The issue will be submitted to the jury by the court only in the event that, after weighing the evidence and the credibility of witnesses, the court is of the opinion that reasonable minds might fairly come to different conclusions as to whether the evidence of the circumstances would create a basis for a reasonable inference of negligence." G.L. 1956 § 9-19-33.
The plaintiff has presented Dr. Poulton for qualification as an expert. In his deposition testimony, Dr. Poulton asserts that the injury suffered by plaintiff is one that does not ordinarily occur absent negligence. Dr. Poulton also testified that the injury could potentially occur spontaneously. As plaintiff was injured in the operating room where various agents of the hospital were in control of the situation, plaintiff cannot be said to be contributorily negligent under the present facts. The doctrine of res ipsa loquitur "is not a rule of pleading, and a plaintiff need not specifically aver that he plans to rely on the doctrine in order to rely on it later." Montuori v. Narragansett Elec.Co., 418 A.2d 5, 13 (R.I. 1980). Regarding the theory of res ipsaloquitur, this Court will address the issue at the time of trial.
Counsel shall submit an appropriate order for entry.
[1] This Court shall neither address defendants' separate motions inlimine to exclude evidence of Fischer's prior criminal convictions nor the revocation of Fischer's medical licenses in Massachusetts and Rhode Island. This Court is satisfied that counsel for plaintiff and defendants have been apprised, on the record, that said motions may be later addressed, in accordance with the rules of evidence, at trial depending upon the procedural developments.