**Supreme Court**

No. 2012-23-Appeal.
No. 2012-24-Appeal.
(PC 09-6146)

Barbara C. Cayer           :

v.                 :

Cox Rhode Island Telecom, LLC d/b/a Cox  :
      Communications et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2012-23-Appeal.
No. 2012-24-Appeal.
(PC 09-6146)

Barbara C. Cayer        :

v.        :

Cox Rhode Island Telecom, LLC d/b/a Cox  :
    Communications et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  In an October 2006 rear-end automobile accident, a work van being driven by the defendant, cable installer Nelson Ovalles, collided with the car of the plaintiff Barbara C. Cayer.  As a result of that accident, Cayer filed a lawsuit against Nelson Ovalles and his wife, Flor, who owned the van, as well as the company on whose behalf Ovalles apparently performed cable-installation work, Cox Rhode Island Telecom, LLC d/b/a Cox Communications (Cox).  After a Superior Court justice granted Cox's motion for summary judgment, Cayer filed an appeal of the final judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.  Before this Court, Cayer argues that genuine issues of material fact exist about whether Nelson Ovalles was an employee of Cox at the time of the accident.  Additionally, Cayer appeals a second Superior Court justice's decision to deny her motion to amend her complaint to assert claims against M&M Communications, Inc. (M&M), a

- 1 -

contractor for Cox, on the ground that the statute of limitations had expired. The plaintiff

contends that, under the provisions of Rule 15 of the Superior Court Rules of Civil Procedure,

the amended complaint relates back to the date of the original complaint. For the reasons set

forth in this opinion, we affirm the judgment in favor of Cox, and we deny and dismiss the

appeal with regard to the motion to amend because it is improperly before us.

## I

## Facts and Travel

There is little or no dispute about the facts of this case. On October 23, 2006, at the

intersection of Norwood Avenue and Broad Street in Cranston, plaintiff Barbara Cayer was

stopped at a red light. Directly behind plaintiff's car was a van that was being operated by

defendant Nelson Ovalles, who was employed as a cable installer. According to Ovalles, while

he was stopped at the red light, he glanced at a work order and then raised his eyes to see that the

light had turned green. He said that he removed his foot from the brake in anticipation of

proceeding through the intersection, but he instead rear-ended plaintiff's car. The plaintiff

alleged that she sustained injuries as a result of the accident.

On October 22, 2009, the day before the three-year statute of limitations for personal-

injury actions was to expire, plaintiff sued Nelson Ovalles and his wife, Flor Ovalles.[1] The

plaintiff also named Cox, a telecommunications service provider, as a defendant, alleging that

that company was vicariously liable because it was "the agency wh[ich] controlled the use and

purpose for the operation of the defendants' vehicle[.]"

On August 16, 2010, Cox filed a third-party complaint against M&M, a company with

which Cox previously had entered into an installation agreement. The installation agreement

---

[1] Although the complaint and some other documents in this case use the name Fior, it appears to
have been a mistake, and the proper name is Flor.

provided that M&M would "perform the installation of equipment that enables subscribers [of Cox] to receive the [telecommunications service]." According to the deposition testimony of a supervisor at Cox, M&M was engaged to handle the "overflow" work that Cox's in-house technicians were not able to perform.

In its third-party complaint, Cox sought contribution and indemnification from M&M in the event that Cox were found to be liable to plaintiff. Cox also alleged that M&M had failed to procure insurance, as required by the installation agreement.

Cox filed a motion for summary judgment on December 10, 2010, arguing that it could not be vicariously liable for the actions of Nelson Ovalles because it neither "own[ed] the vehicle nor did it have an employment contract or relationship with Mr. Ovalles." After a hearing on June 28, 2011, a justice of the Superior Court agreed with Cox and granted the motion.

Confronted with the dismissal of Cox from the case, plaintiff then filed a motion to amend her complaint to include a direct claim against M&M. The motion to amend came before a different justice of the Superior Court, who denied the motion because the statute of limitations had expired with respect to any claims against M&M and because the amended complaint did not relate back to the date of the filing of the original complaint.

On September 20, 2011, final judgment was entered in favor of Cox pursuant to Rule 54(b). An order denying the motion to amend was entered on October 4, 2011. The plaintiff filed separate appeals to this Court: the final judgment in favor of Cox was appealed on October 11, 2011, and the order denying the motion to amend the complaint was appealed on October 28, 2011. Additional facts will be provided below where necessary.

## II

## Summary Judgment

Much of the dispute in this case hinges on the nature of the relationship between Nelson Ovalles, M&M, and Cox. Cox maintains that Ovalles is not its employee, and it therefore cannot be held vicariously liable for his conduct. The plaintiff, on the other hand, argues that Cox's control over Ovalles's activities was sufficient to create a question of material fact as to whether an employment relationship existed and that that should have precluded summary judgment.

## A

## Standard of Review

Our review of the grant of summary judgment is <u>de novo</u>. <u>Zanni v. Voccola</u>, 13 A.3d 1068, 1070 (R.I. 2011) (citing <u>Classic Entertainment & Sports, Inc. v. Pemberton</u>, 988 A.2d 847, 849 (R.I. 2010)). The standards that we employ are the same as those applied by the hearing justice: "[w]e will affirm the granting of 'a party's motion for summary judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" <u>Id.</u> at 1070-71 (quoting <u>Pemberton</u>, 988 A.2d at 849). Before granting summary judgment, the hearing justice should give the benefit of all reasonable inferences to the party against whom summary disposition is sought. <u>Id.</u> at 1071. That party, however, "cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions" and "bears the burden of showing the existence of disputed issues of material fact by competent evidence[.]" <u>Id.</u> at 1071 (quoting <u>Pemberton</u>, 988 A.2d at 849).

## Discussion

"An agency relationship exists when three elements coalesce: (1) the principal must manifest that the agent will act for him, (2) the agent must accept the undertaking, and (3) the parties must agree that the principal will be in control of the undertaking." Rosati v. Kuzman, 660 A.2d 263, 265 (R.I. 1995) (citing Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I. 1987)). Under the principles of agency law, an employer will incur vicarious liablility for its employee's negligent act if that act is committed within the scope of the latter's employment. See Houle v. Galloway School Lines, Inc., 643 A.2d 822, 826 (R.I. 1994) (citing Becker v. Beaudoin, 106 R.I. 562, 564, 261 A.2d 896, 898 (1970); Smith v. Raparot, 101 R.I. 565, 566, 225 A.2d 666, 666 (1967)); see also Restatement (Third) Agency § 2.04 (2006). However, "[i]n general, 'one who employs an independent contractor is not liable for the negligent acts of that contractor.'" Bromaghim v. Furney, 808 A.2d 615, 617 (R.I. 2002) (quoting East Coast Collision & Restoration, Inc. v. Allyn, 742 A.2d 273, 275 (R.I. 1999)). The line of demarcation between those who are employees and those who are independent contractors is therefore significant.

"[T]he test [as to] whether a person is an independent contractor is based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control." Absi v. State Department of Administration, 785 A.2d 554, 556 (R.I. 2001) (quoting Pasetti v. Brusa, 81 R.I. 88, 91, 98 A.2d 833, 834 (1953)). The determination of whether a relationship between parties constitutes an employer-employee relationship is a mixed question of fact and law. Di Orio v. R. L. Platter, Inc., 100 R.I. 117, 122, 211 A.2d 642, 645 (1965).

In Absi, 785 A.2d at 556, we held that dentists and dental hygienists who provided dental services at the Adult Correctional Institutions were independent contractors, and not employees of the state, because the state did not "exercise[] control over the 'method[s]' of dental treatment[,]" even if the workers were "generally supervised[.]" We employed a similar rationale in Lauro v. Knowles, 739 A.2d 1183, 1185 (R.I. 1999). In that case, a patient sued a surgeon, alleging that he was liable vicariously for the negligence of anesthetists who had been in the operating room. We held that, despite the surgeon's admissions that he requires an anesthetist to be present, no evidence had been presented that would demonstrate that the surgeon "controlled the work or conduct of the anesthesia personnel who supposedly caused [the patient's injury]." Id. at 1185.

In the case before us at present, the facts on which plaintiff relies in an effort to demonstrate the existence of an employer-employee relationship are undisputed. In our opinion, there is no doubt that Nelson Ovalles was not an employee of Cox. The relationship between Cox and M&M is governed by the installation agreement. That document clearly provides that

> "Cox and [M&M] intend that the relationship between them created by this Agreement is that of independent contractor. No agent, employee, servant or subcontractor of [M&M] shall be deemed to be the agent, employee, servant or subcontractor of Cox. Cox is interested only in the results obtained under this Agreement; the manner and means of conducting the [w]ork in compliance with the [s]pecifications are under the control of [M&M]. * * * [M&M] will be solely and entirely responsible for its acts and the acts of its agents, employees, servants and subcontractors during the performance of this Agreement."

The agreement explicitly disavows an employer-employee relationship between Cox and the technicians, such as Ovalles, who are engaged by M&M. Further, the details of the relationship between Cox and Ovalles, as described in the deposition testimony and Ovalles's

answers to interrogatories, reveal that Cox had limited power to control the manner in which Ovalles performed his installation duties.

Ovalles received a form 1099 from M&M for the amount paid to him for his services, indicating that he was an independent contractor.[2]  See Hill v. Rhode Island State Employees' Retirement Board, 935 A.2d 608, 611 (R.I. 2007) (citing Mazzei v. Rock-N-Around Trucking, Inc., 246 F.3d 956, 964 (7th Cir. 2001)).  Also, Ovalles was paid by the job.  By contrast, Cox paid its own employee technicians hourly, and they were given a vehicle, uniforms, boots, tools, rain gear, and snow gear, items that Cox did not provide to M&M's technicians.  Ovalles also was required to provide his own vehicle.  The only equipment that Cox made available to M&M was a weekly supply of cable wire, fittings, and similar items.  This equipment was not delivered to installers such as Ovalles, but rather to M&M.  It was stored in M&M's warehouse and was used by technicians on job sites to which they traveled in their own vehicles.

The record also reveals that Cox had minimal contact with M&M's technicians. According to the deposition of David Gosselin, who was Cox's contractor supervisor in 2006, Cox assigned work first to its own employees, and then to contractors like M&M.  These "overflow" jobs would be assigned by M&M to technicians like Ovalles, each of whom was assigned a technician number.  Cox had no knowledge of the identity of the technician who would actually perform the work at a particular job site.  Cox did not provide any training to M&M technicians, and installation guidelines were largely dictated by state regulations.

Indeed, Cox's only oversight consisted of spot inspections of work performed by M&M technicians, conducted one to three days after an installation.  If one of those checks revealed

---

[2] The Internal Revenue Code requires the payer of certain types of payments of $600 or more to file a form indicating the amount of payments and the recipient's name and address.  26 U.S.C. § 6041.  As one court explained, the form "requests information about non-employee compensation."  Springfield v. United States, 88 F.3d 750, 752 (9th Cir. 1996).

that Cox had paid M&M for work that had been executed improperly, or not at all, Cox would "backcharge" M&M, but not the individual technician. Similarly, if an M&M technician did not arrive at a job site during the two-hour window that Cox had provided to its customer, Cox contacted M&M, not the technician. Cox did not oversee or check the work of M&M's technicians as it was being done. Even though technicians from both Cox and M&M may have worked at the same location at the same time, this would occur if, and only if, each had his or her own work order and each was installing a separate service, such as telephone, internet, or cable television.

It is beyond convincing to us that Cox did not have the requisite power to control the performance of Ovalles's work and that he cannot be considered Cox's employee. See Absi, 785 A.2d at 556; Lauro, 739 A.2d at 1185. Cox expressly renounced such control when it agreed, as is provided in the installation agreement, that it "[wa]s interested only in the results obtained under th[at] Agreement." Although M&M's technicians were required to designate their affiliation with both M&M and Cox on their vehicles, clothing, and identification badges, this was necessary to notify customers that the technician who showed up at their homes or businesses was affiliated with the customer's cable provider.[3] These identification requirements do not establish an ability to control a person's performance as is required for an employer-employee relationship. Thus, we have no hesitation in holding that summary judgment in favor of Cox was proper.

---

[3] The identification of Ovalles as associated with Cox may be grist for the mill for an argument based on apparent authority. This argument, however, has not been made to us, nor would such a theory appear to apply to these facts. Apparent authority may result in the liability of a principal if the principal held out someone as its agent and reliance upon the principal's actions results in injury to a third party. George v. Fadiani, 772 A.2d 1065, 1069 (R.I. 2001) (citing Rodrigues v. Miriam Hospital, 623 A.2d 456, 462 (R.I. 1993)). However, such a theory requires reliance, and it is clear that plaintiff was not relying on Ovalles's apparent association with Cox when he rear-ended her.

### III

### Motion to Amend

After Cox garnered summary judgment by showing the absence of an employer-employee relationship between it and Nelson Ovalles, plaintiff attempted to amend her complaint to include a claim against M&M. That motion was denied, and the order of the hearing justice was appealed to this Court. However, before we examine the merits of the appeal, we must consider whether it is properly before us. We conclude that it is not.

The record indicates that, although Cox received a Rule 54(b) judgment in the Superior Court, the case moves on in that tribunal. The claims against Nelson and Flor Ovalles remain unresolved, and the order denying the motion to amend to assert claims against M&M is interlocutory. See Simpson v. Vose, 702 A.2d 1176, 1177 (R.I. 1997) (mem.) (defining "[i]nterlocutory orders" as "those that are provisional or temporary, or that decide some intermediate point or matter but are not a final decision of the whole matter").

"Generally, interlocutory orders are not subject to review unless the order or decree falls within one of the exceptions set forth in G.L. 1956 § 9-24-7 * * * ."[4] Chiaradio v. Falck, 794 A.2d 494, 496 (R.I. 2002). Additionally, "an order may fall within the ambit of our judicially created rule that permits review of an interlocutory order that has such an element of finality as to require immediate review by this Court to avoid possible injurious consequences." Id. (citing McAuslan v. McAuslan, 34 R.I. 462, 472, 83 A. 837, 841 (1912)). We have said that

---

[4] General Laws 1956 § 9-24-7 provides as follows:
> "Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

"[c]onsequences become 'injurious' * * * when their occurrence is imminent and the damage they will work irreparable." Id. (quoting Mendes v. Mendes, 103 R.I. 734, 736, 241 A.2d 297, 298 (1968)). In Anjoorian v. Kilberg, 711 A.2d 638 (R.I. 1998) (mem.), a defendant attempted to amend his answer to add a counterclaim and affirmative defenses. The trial justice refused to allow the counterclaim, but he allowed the affirmative defenses, although only as they applied to the complaint's lone remaining count. Id. We held that the trial justice's decision was an interlocutory order and therefore not appealable. Id.; see also Jamestown Land Co. v. Sutton, 655 A.2d 254 (R.I. 1995) (mem.) (denying and dismissing an appeal of a denied motion to dismiss and a granted motion to amend because they were interlocutory orders and not final judgments).

The order from which the plaintiff attempts to appeal is the denial of her motion to amend her complaint to add claims against M&M. That order does not fall within one of the exceptions to our final-judgment rule outlined in § 9-24-7, because it did not grant or continue an injunction, appoint a receiver, order the sale of real or personal property, or order or deny a new trial after a jury trial. See § 9-24-7; see also Chiaradio, 794 A.2d at 496. Neither does the order appear likely to cause consequences that are imminent or that would cause irreparable damage. See Chiaradio, 794 A.2d at 496. As the case proceeds against the Ovalleses and should it result in a final judgment, an opportunity may present itself for this Court to review the motion to amend that was denied by the hearing justice. At this time, however, the appeal of the motion to amend is not properly before us, and we therefore will not entertain it.

**IV**

**Conclusion**

For the foregoing reasons, the judgment of the Superior Court in favor of Cox is affirmed, and the appeal of the interlocutory order denying the plaintiff's motion to amend is denied and dismissed. The papers are remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Barbara C. Cayer v. Cox Rhode Island Telecom, LLC d/b/a Cox Communications et al.

**CASE NO:**  No. 2012-23-Appeal.
No. 2012-24-Appeal.
(PC 09-6146)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  February 21, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

　　　　　　Associate Justice Sarah Taft-Carter

　　　　　　Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

　　　　　　For Plaintiff:  Ronald J. Resmini, Esq.

　　　　　　For Defendant:  Stanley F. Pupecki, Esq.
　　　　　　　　　　　　　James G. Atchison, Esq.