**Supreme Court**

No. 2013-337-Appeal.
No. 2013-341-Appeal.
(PC 05-5324)

Cathay Cathay, Inc. et al.          :

        v.                           :

    Vindalu, LLC et al.              :

NOTICE:    This  opinion  is  subject  to  formal  revision  before
publication in the Rhode Island Reporter.  Readers are requested to
notify  the  Opinion  Analyst,  Supreme  Court  of  Rhode  Island,
250 Benefit Street, Providence, Rhode Island 02903, at Telephone
222-3258 of any typographical or other formal errors in order that
corrections may be made before the opinion is published.

**Supreme Court**

No. 2013-337-Appeal.
No. 2013-341-Appeal.
(PC 05-5324)

Cathay Cathay, Inc. et al.        :

v.            :

Vindalu, LLC et al.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  These consolidated appeals came before the Supreme Court on December 1, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in the appeals should not be summarily decided.  Before this Court, the plaintiffs, Cathay Cathay, Inc. (Cathay Cathay) and Surf & Turf Grille, Inc. (Surf & Turf) (collectively, plaintiffs) appeal first from an entry of partial final judgment in the Superior Court in favor of the defendant, Rouse Providence, LLC (Rouse).[1]  The plaintiffs also mount a separate appeal challenging the denial in part of their motion to file a second amended complaint.  After a careful review of the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are satisfied that cause has not been shown and that these appeals may be decided at this time.  For the reasons set forth in this opinion, we vacate the entry of partial final judgment,

---

[1] Vindalu, LLC d/b/a Gourmet India is not a party to this appeal.  Nor is defendant, Japan Café of Providence Place, Inc., as it is no longer in business and also previously was enjoined from serving the foods in dispute in this case.

and we remand to the Superior Court; we decline to hear the appeal of the denial in part of the motion to amend the complaint.

**Facts and Travel**

This case requires us, yet again, to recount the all-too-familiar ingredients of the various rice dishes offered for sale in the food court at the Providence Place Mall (Providence Place or mall) in a pending Superior Court action. We direct those unversed in this protracted dispute to Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740 (R.I. 2009) (Cathay Cathay I). We shall discuss here only those facts relevant to this appeal. To do so, we again must travel back in time now more than two decades to December 29, 1995, before Providence Place opened its doors to the public. In anticipation of the mall's opening, David Chu (Chu) signed a lease agreement with Rouse's predecessor in interest for the purpose of operating his Chinese restaurant, Cathay Cathay, in the Providence Place food court. The lease provided for the exclusive right of Cathay Cathay to serve "[w]hite [r]ice--boiled or steamed" either "alone or in combination with any other foods."

In 1999, before Cathay Cathay opened for business, Japan Café of Providence Place, Inc. (Japan Café) entered into a lease agreement with Rouse's predecessor in interest to operate a restaurant in the food court. The lease, which provided that Japan Café would offer a variety of Japanese meals to mall customers, incorporated a copy of the restaurant menu in the list of foods Japan Café was permitted to sell. The lease also contained the following language: "Notwithstanding anything contained in this Lease to the contrary * * *, in no event shall Tenant sell any of the items listed on [E]xhibit I, whether by name or the same or substantially similar in content or form and under any other name." The list of foods provided in Exhibit I was nearly identical to the list of foods that Cathay Cathay had contracted for the exclusive rights to sell.

Japan Café opened its business before Cathay Cathay did. The plaintiffs allege that Japan Café initially served white rice when it opened, but after Chu complained, it began to sell a form of rice marketed as "brown rice."[2] Cathay Cathay started serving customers shortly thereafter in January 2000.

A year later, on November 10, 2000, Chu entered into a second lease agreement with Rouse's predecessor in interest for the operation of another restaurant, Surf & Turf, in the Providence Place food court. Under the lease, Surf & Turf had the exclusive right to sell "[O]riental style foods," which were enumerated in an accompanying list that paralleled the list of foods identified in the Cathay Cathay lease. The lease also gave Surf & Turf the exclusive right to sell "[r]ice--boiled or steamed."

Then, on January 7, 2005, Rouse entered into a lease agreement with the predecessor in interest to Vindalu, LLC (Gourmet India) to operate its restaurant, Gourmet India, in the Providence Place food court. The lease agreement contained the following provision:

> "Tenant is expressly prohibited from offering for sale at the Premises white rice or fried rice. In addition, Tenant is expressly prohibited from selling Oriental style foods, including but not limited to those items listed on Exhibit 'I' attached to this Lease and incorporated herein by reference and any other foods that are distinctly part of Oriental cuisine served in Oriental (i.e. Chinese, Japanese, Malaysian, Thai, Korean, [F]ilipino, Vietnamese, etc.) restaurants and any foods or dishes substantially similar thereto to [sic] in taste, appearance[,] style and/or ingredients, whether or not styled or denominated as an Oriental food dish."

Like Exhibit I to the Japan Café lease, the list of foods named in Exhibit I to the Gourmet India lease matched closely that which Cathay Cathay and Surf & Turf held the exclusive rights to sell. The lease also provided that: "[n]otwithstanding anything to the contrary contained in Exhibit

---

[2] White rice was not listed in the permitted Japan Café menu that was incorporated within the lease.

'I'[,] Landlord warrants that Tenant's incidental sale or use of Basmati Rice as a side dish or ingredient shall not be deemed a violation of the prohibition of the sale of rice." Gourmet India began serving food-court customers in June 2005.

On October 14, 2005, plaintiffs brought this action against Rouse, Gourmet India, and Japan Café in the Providence County Superior Court. The plaintiffs sought to enjoin Gourmet India and Japan Café from selling the foods to which they alleged having exclusive rights. They also requested that the court order Rouse to enforce its lease agreements with Cathay Cathay and Surf & Turf against Gourmet India and Japan Café. In addition to injunctive relief, plaintiffs sought compensatory damages for which they requested a jury trial. The plaintiffs subsequently filed an amended complaint, which also included counts for tortious interference against both Gourmet India and Japan Café, and they sought an injunction to enforce the provisions of the lease agreement between Gourmet India and Rouse, alleging a third-party contractual interest in the lease.

The Superior Court commenced its hearing for a preliminary injunction on November 30, 2005. After a full day of witness testimony, the trial justice stated that he was "inclined to direct that the matter be consolidated for a trial on the merits" in accordance with Rule 65 of the Superior Court Rules of Civil Procedure.[3] He stated:

> "We can get everything that can reasonably be tried, tried now. If there are loose ends, whether it is [attorneys'] fees or some other action that somebody may want a jury on, because it is a claim for damages, * * * that can be separated out; but, certainly, this whole issue of the meaning of the exclusive arrangement, whether or not the other * * * restaurants[] are * * * violating the terms of their own contract[s] or the third-party beneficiary status that the

---

[3] Rule 65(a)(2) of the Superior Court Rules of Civil Procedure provides, in pertinent part: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

> plaintiff[s] may well enjoy per the contracts, whether or not the mall has done everything it should have done both in the drafting of the contracts and living up to same, * * * all of that hopefully will be resolved in this proceeding." (Emphasis added.)

He instructed the parties to consider the issue of consolidation overnight. Returning to the issue the next day, December 1, 2005, counsel for plaintiffs told the trial justice that his clients may seek to add another count against Rouse depending on the outcome of the present proceeding. The trial justice responded, "I can only deal with what is in front of me now." Without objection, the trial justice ordered from the bench that he was "consolidating the present hearing, the preliminary injunction[,] with any final claim for permanent injunction." No written order was issued.

At the conclusion of the proceeding on January 13, 2006, the trial justice granted Gourmet India's motion for judgment on partial findings, in accordance with Rule 52(c) of the Superior Court Rules of Civil Procedure.[4] The court entered partial final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure on January 27, 2006. The plaintiffs appealed that judgment to this Court; neither Rouse nor Japan Café were parties to that appeal, and the claims against these defendants remained pending in the Superior Court.

On May 4, 2006, while plaintiffs' appeal of the Gourmet India judgment was pending, the trial justice issued another bench decision (May 4, 2006 decision). In the words of the trial justice: "For the purposes of this decision I consider the application of the plaintiffs, Cathay

---

[4] Rule 52(c) of the Superior Court Rules of Civil Procedure provides, in relevant part:

> "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence."

- 5 -

[Cathay] * * * and Surf & Turf * * *, <u>for injunctive relief</u> against defendants, Japan Café of Providence Place, Inc., Rouse Providence, LLC [<u>sic</u>]." (Emphasis added.)  The trial justice focused his findings on whether Japan Café violated its lease agreement by selling white rice and other prohibited foods.  He found such a breach and granted plaintiffs' request for injunctive relief against Japan Café.

The bench decision was almost exclusively limited to the liability of Japan Café. Although the trial justice noted in passing that Rouse owed plaintiffs a duty of good faith and fair dealing, he did not address whether Rouse breached that duty by permitting Japan Café to violate the provisions of its lease with Rouse; he made no findings of fact on that issue.  On May 17, 2006, the Superior Court issued a written order granting plaintiffs' prayer for an injunction against Japan Café.  The order does not grant plaintiffs relief against Rouse, nor does it purport to resolve plaintiffs' claims for injunctive relief against Rouse in any way.  Japan Café later closed its business.

On January 9, 2009, this Court issued its decision in <u>Cathay Cathay I</u>, 962 A.2d at 742, with regard to plaintiffs' appeal of the judgment entered in favor of Gourmet India.  We affirmed the judgment on plaintiffs' contractual claims against Gourmet India, albeit on different grounds. <u>Id.</u> at 747.  We vacated the ruling on plaintiffs' claim of tortious interference and remanded the matter for a new trial on that count.  <u>Id.</u> at 747-48.

On remand, the case was assigned to a second Superior Court justice, who, upon review of the papers, suggested that Rouse seek entry of partial final judgment in accordance with Rule 54(b).  Rouse did so, and the motion was granted, over plaintiffs' objection.  The plaintiffs subsequently filed a motion for clarification and reconsideration, arguing that issues remained

outstanding that required further litigation, including the question of money damages relating to whether Rouse owed plaintiffs a reduction in rent pursuant to their respective lease agreements.[5]

When the Superior Court heard the motion on July 25, 2012, the trial justice admonished plaintiffs that they had not raised the issue of rent reduction in the original or first amended complaint or at trial. She advised plaintiffs either to file a new complaint or amend the operative complaint if they sought to litigate the issue. The court denied the motion for clarification or reconsideration. Partial final judgment in favor of Rouse entered on August 3, 2012, declaring that "[j]udgment hereby enters in favor of Rouse Providence[,] LLC on [c]ounts [1] and [2] of the [a]mended [c]omplaint."[6]

On August 23, 2012, plaintiffs moved to amend their complaint a second time. Notably, the proposed second amended complaint added a claim for damages pursuant to the rent-reduction clause of their respective lease agreements and also included a new claim against Rouse for "bad faith." At a September 27, 2012 hearing, the Superior Court justice denied plaintiffs' motion to amend on the grounds of <u>res judicata</u>, futility, and judicial estoppel.

In these consolidated appeals, plaintiffs challenge (1) the entry of partial final judgment in favor of Rouse and (2) the denial of their second motion to amend the complaint.

---

[5] Article 1, section 1.04(b) of Cathay Cathay's lease agreement provides:

> "In the event that Landlord violates the terms of [Cathay Cathay's exclusive rights under] this Lease, Tenant's sole and exclusive remedy shall be a reduction of Tenant's Fixed Annual Minimum Rent then in effect by forty percent (40%) and a proportionate adjustment of Annual Minimum Gross Receipts for the period during which there continues to exist a violation of [the exclusive rights under] this Lease."

Surf & Turf's lease agreement contains a similar provision under its article 1, section 1.04(b).

[6] Counts 1 and 2 of the amended complaint included every count against Rouse.

**Standard of Review**

This Court reviews the entry of final judgment for an abuse of discretion. Metro Properties, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA, 934 A.2d 204, 207 (R.I. 2007). We review the grant or denial of a motion to amend a complaint under the same standard. Barrette v. Yakavonis, 966 A.2d 1231, 1236 (R.I. 2009). "In applying [the abuse-of-discretion] standard, this Court must determine 'whether [the trial justice's] findings are supported by the evidence or whether in making such findings [the trial justice] misconceived or overlooked any material evidence.'" Coates v. Ocean State Jobbers, Inc., 18 A.3d 554, 558 (R.I. 2011) (quoting Harvey v. Town of Tiverton, 764 A.2d 141, 143 (R.I. 2001)).

**Analysis**

**I. Partial Final Judgment**

We begin with plaintiffs' appeal from the entry of partial final judgment in favor of Rouse. Rule 54(b) provides, in relevant part:

> "When * * * multiple parties are involved, the court may direct the entry of a final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

In reviewing a Rule 54(b) certification of the entry of final judgment, this Court employs a two-part inquiry. See Metro Properties, Inc., 934 A.2d at 207. First, we assess "whether the [trial] justice properly determined that the action below involved either multiple parties or multiple claims and whether the lower court's disposition adjudicated one or more but fewer than all of the claims before it." Id. Adjudication requires the final, deliberate resolution of a dispute. See, e.g., Black's Law Dictionary 50 (10th ed. 2014) (defining "adjudication" as "[t]he legal process of resolving a dispute; the process of judicially deciding a case"); see also Kalven v. City of

Chicago, 7 N.E.3d 741, 745 (Ill. App. Ct. 2014) ("'Adjudication' is generally understood to involve a formalized legal process that results in a final and enforceable decision."). If such determinations were proper, we next ask "whether the [trial] justice 'properly determined that there was no just reason for delay.'" Metro Properties, Inc., 934 A.2d at 207 (quoting Westinghouse Broadcasting Co. v. Dial Media, Inc., 122 R.I. 571, 577, 410 A.2d 986, 989 (1980)).

Before embarking on this inquiry, however, we review the minimum requirements under the Superior Court Rules of Civil Procedure for a judicial determination to constitute a partial final judgment in a nonjury trial. In accordance with Rule 52(a) and (c), the decision must "find the facts specially and state separately its conclusions of law thereon." Rule 52(a); see also Rule 52(c) (stating that a judgment on partial findings "shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule"). While the decision need not include "extensive analysis and discussion of all the evidence presented in a bench trial," Broadley v. State, 939 A.2d 1016, 1021 (R.I. 2008), it must contain, at the very minimum, a factual finding and a conclusion of law on each cause of action adjudicated, see, e.g., Cathay Cathay I, 962 A.2d at 747-48. Significantly, this Court vacated the judgment in Cathay Cathay I based on that very failure. See id. A decision fails to comply with the strictures of Rule 52(a) and (c) if it does not "yield a full understanding and resolution of the controlling and essential factual and legal issues." Nardone v. Ritacco, 936 A.2d 200, 206 (R.I. 2007) (concluding that language from a Superior Court decision that "[i]t might be pointed out that for many years the defendants utilized the 10-12 foot way at the suggestion of the original grantor, but I believe [it] deliberately misstates the grantor's language to justify their position at this time" was insufficient, on its own, to constitute an adjudication of the issue of whether the defendants had

established a prescriptive easement) (quoting <u>Town of Charlestown v. Beattie</u>, 422 A.2d 1250, 1251 (R.I. 1980)).  In reviewing a decision of the Superior Court, "[w]e cannot * * * 'be kept in the dark'" as to the legal conclusion or its factual basis.  <u>Id.</u> (quoting <u>Beattie</u>, 422 A.2d at 1251).

It is within this context that we commence with the first step of our two-part inquiry.  As there is no dispute that the action involved multiple claims and parties, the threshold question is whether the claims against Rouse were adjudicated during the course of the hearing on injunctive relief.  The second trial justice concluded that the May 4, 2006 decision, in which the first trial justice found that Japan Café had violated the terms of its lease with Rouse, also included a decision denying plaintiffs' breach-of-contract claims against Rouse and as a third-party beneficiary of Japan Café's contract.  We disagree.

We are mindful that the language pertaining to the consolidation of the trial and the May 4, 2006 decision lacks clarity.  We also note that the first trial justice's statements from the bench on November 30, 2005, when he first broached the possibility of consolidation, are inconsistent with his subsequent rulings.  However, following our careful scrutiny of the record, we are of the view that the first trial justice adjudicated only the claims for injunctive relief and not plaintiffs' contractual claims against Rouse.  His order from the bench on December 1, 2005, in which he indicated that he was "consolidating the present hearing, the preliminary injunction[,] with <u>any final claim for permanent injunction</u>," demonstrates his intention to bifurcate the trial into separate proceedings on the claims for injunctive relief and the contractual claims—the latter of which are jury matters.  (Emphasis added.)  Moreover, in issuing the May 4, 2006 decision, the trial justice stated that "[f]or the purposes of this decision I consider the application of the plaintiffs * * * <u>for injunctive relief</u> against defendants."  (Emphasis added.)  The first trial justice's intention to try the breach-of-contract claims separately is further

evidenced by the May 17, 2006 order, which expressly granted plaintiffs relief against Japan Café but not Rouse. Although Rule 65 certainly gave the first trial justice the authority to consolidate the trial on both the prayers for injunctive relief and the contractual claims—assuming there was a jury waiver—it is clear from the record that he did not do so and addressed only the requests for the preliminary and permanent injunctive relief. There is no record indication that the trial justice intended to simultaneously adjudicate the contractual claims against Rouse, nor did he.[7]

The May 4, 2006 decision contains but a single passing reference to the law related to Rouse:

> "Mr. Chu and Peter Steingraber, the vice president and the landlord at the time, signed both leases and both clearly knew that David Chu was the principal of both Surf & Turf and Cathay Cathay. No one has suggested nor could they legitimately suggest that the landlord was somehow violating the exclusive rights of the original [lease] of Cathay Cathay."

It is our conclusion that the second trial justice accorded undue weight to the latter sentence and overlooked the first when she found that the May 4, 2006 decision disposed of the contractual claims against Rouse. We deem this error. It is plain that the first trial justice was specifically referring to the lease agreement Rouse entered into with Surf & Turf—an entity also owned by Chu—not the landlord's agreements with Gourmet India and Japan Café that were the subject of the dispute. The trial justice merely observed that Rouse did not violate the restrictive covenant with Cathay Cathay when it entered into a nearly identical restrictive covenant with Surf & Turf

---

[7] We further note that Rouse represented in a memorandum to the Superior Court, submitted on May 10, 2007, in opposition to an unrelated motion by plaintiffs to adjudge Rouse in contempt of the May 17, 2006 order, that the first trial justice "consolidated the hearing on [Cathay] Cathay's request for preliminary injunction with the trial on the merits of [Cathay] Cathay's claim for injunctive relief." (Emphasis added.) Rouse did not contend in 2007, as it does now, that the contractual claims were consolidated as well.

because Cathay Cathay and Surf & Turf shared common ownership under Chu. Because this statement by the first trial justice was the sole conclusion of law made with respect to Rouse—and it did not involve a matter in controversy—there simply was no basis for the second trial justice to conclude that the May 4, 2006 decision resolved the claims against Rouse. Indeed, if that were the case, that judgment would not withstand appellate scrutiny under Rule 52. See, e.g., Cathay Cathay I, 962 A.2d at 747-48.

Disregarding the absence of any conclusion of law with respect to plaintiffs' breach-of-contract claims against Rouse within the May 4, 2006 decision, Rouse claims that "the lack of a damage award resulted from the fact that [plaintiffs] repeatedly and consistently disavowed the availability of a remedy at law before, during, and after trial." Indeed, plaintiffs represented multiple times before the first trial justice that injunctive relief was the only adequate remedy to right the ship.[8] It is not entirely clear from the record whether plaintiffs were referring only to their claims against Gourmet India and Japan Café, or if they intended to aver that injunctive relief was the lone remedy available against Rouse as well. Regardless, it is of no moment in the context of this appeal. There simply is no evidence that the first trial justice made any determination as to Rouse's contractual liability. To reach the issue of damages, he first would have had to rule on the breach-of-contract claims, which he did not.

Accordingly, the second trial justice abused her discretion in determining that there was an adjudication on the merits of plaintiffs' contractual claims against Rouse. Because we conclude that the first trial justice did not decide plaintiffs' claims against Rouse, we need not

---

[8] It was suggested at oral argument that plaintiffs did not seek injunctive relief against Rouse. However, a plain reading of the original and first amended complaints belies this assertion.

tread through the second step of the two-part inquiry as to whether Rule 54(b) certification was proper.

Nonetheless, we pause to note our strong preference for "avoid[ing] piecemeal appellate review by delaying entry of judgment until all claims involving all parties are ripe for disposition and entering judgment as to all only when that time arrives." Metro Properties, Inc., 934 A.2d at 207 (quoting Robert B. Kent, et al., Rhode Island Civil Procedure, § 54:3 (West 2006)). In fact, we have observed that the very "purpose of [Rule 54(b)] is to avoid piecemeal appeals." Astro-Med, Inc. v. R. Moroz, Ltd., 811 A.2d 1154, 1156 (R.I. 2002) (quoting 1 Kent, R.I. Civ. Prac. 396, 397 (1969)). The delay of the entry of judgment allows this Court to avoid the unnecessarily tedious and inefficient task of "having to keep relearning the facts of a case on successive appeals." Id. (quoting Jack Walters & Sons Corp. v. Morton Building, Inc., 737 F.2d 698, 702 (7th Cir. 1984)). This matter has been taken up in the absence of a final judgment on two occasions. We are loath to consider more issues on appeal before the complete and final resolution of the case in the Superior Court.

## II. Motion to Amend the Complaint

The plaintiffs also appeal the denial of their second motion to amend the complaint. However, we decline to entertain the issue on its merits.[9] It is well settled that interlocutory orders generally are not subject to review unless they fall within (1) an exception set forth in G.L. 1956 § 9-24-7 or (2) the judicially-created McAuslan doctrine. Cayer v. Cox Rhode Island Telecom, LLC, 85 A.3d 1140, 1146 (R.I. 2014); see also McAuslan v. McAuslan, 34 R.I. 462, 472, 83 A. 837, 841 (1912). Under the McAuslan doctrine, this Court may review an interlocutory order that carries "such an element of finality" that prompt review is necessary for

---

[9] We pause to note, however, that motions to amend should be granted liberally by the trial justice. Crossman v. Erickson, 570 A.2d 651, 654 (R.I. 1990).

- 13 -

avoiding potential injury to the parties. <u>Cayer</u>, 85 A.3d at 1146 (quoting <u>Chiaradio v. Falck</u>, 794 A.2d 494, 496 (R.I. 2002)).

Our opinion in <u>Cayer</u> is dispositive of this issue. In that case, the plaintiff appealed the denial of her motion to amend her complaint to add an additional party while the action against two of the three defendants named in the original complaint remained pending. <u>Cayer</u>, 85 A.3d at 1142-43. This Court declined to hear the matter because no statutory exception applied, nor did the order pose a risk of immediate injury or irreparable damage. <u>Id.</u> at 1147. For the same reasons as we set forth in <u>Cayer</u>, we decline to decide the merits of this issue.

**Conclusion**

The consolidated appeals before this Court represent the second and third times respectively that we have been asked to entertain fragmented issues in this decade-old case. As we recently stated in <u>IDC Properties, Inc. v. Goat Island South Condominium Association, Inc.</u>, 128 A.3d 383 (R.I. 2015), "[w]e are more than persuaded that the [parties to this case] have had their day in court—and then some." <u>Id.</u> at 394 (quoting <u>Palazzo v. Alves</u>, 944 A.2d 144, 155 (R.I. 2008)). "The time has come for this litigation to end." <u>Id.</u> (quoting <u>Palazzo</u>, 944 A.2d at 155). The plaintiffs' appeals are sustained in part and denied in part. The partial final judgment entered by the Superior Court in accordance with Rule 54(b) is vacated. We remand the case to the Superior Court for trial in accordance with this opinion.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Cathay Cathay, Inc. et al. v. Vindalu, LLC et al.

**CASE NO:**           No. 2013-337-Appeal.
                          No. 2013-341-Appeal.
                          (PC 05-5324)

**COURT:**                Supreme Court

**DATE OPINION FILED:**  March 17, 2016

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                Associate Justice Patricia A. Hurst

**ATTORNEYS ON APPEAL:**

                For Plaintiffs:   John J. DeSimone, Esq.

                For Defendant:  Stacey P. Nakasian, Esq.